S. J. McKinley, Appellee, v. Alice McKinley, Appellant.

**Appeal:** FAILURE TO PROCURE TRANSCRIPT: DILIGENCE: NEW TRIAL. The fact that an official reporter fails to furnish appellant with a transcript in time to file the same within six months from entry of the decree is not ground for a new trial, where it appears that appellant was not diligent in procuring the same. Evidence held to show such lack of diligence as to justify the denial of a new trial.

*Appeal from Mitchell District Court.*—HON. J. F. CLYDE, Judge.

TUESDAY, APRIL 12, 1904.

ACTION for divorce. Decree for plaintiff. Petition for new trial denied, and defendant appeals.—*Affirmed.*

*Ellis & Ellis* and *G. E. Marsh* for appellant.

*Eaton & Salisbury* and *A. B. Lovejoy* for appellee.

PER CURIAM.—The decree in plaintiff's favor was rendered on March 10, 1902. On July 24, 1902, defendant by her counsel, served notice of appeal from said decree upon the attorneys for plaintiff and upon the clerk of the district court. On September 23, 1902, defendant filed a petition in said cause in the district court, asking that the decree be vacated and a new trial granted. For grounds of such relief, it is alleged that the evidence introduced upon the trial was taken in shorthand, and that although the appeal was perfected in time to permit a transcript of such evidence to be

made, and although a timely call therefor was in fact made on the official reporter, and his fees secured, yet, by reason of a failure of his eyesight, said reporter could not and did not complete such transcript in time to file the same within six months from the entry of the decree, thus depriving defendant of the benefit of her appeal, without fault on her part. The district court refused to order a new trial, and defendant appeals.

The appeal in the principal case was not taken until nearly five months after the decree of divorce was granted, and, although the right of appeal therefrom continued up to the last hour of the last day of the six-months period, the appellant was bound to be reasonably diligent to make use of the time allowed by statute, in perfecting the record for that purpose. The fact that the transcript was essential to her appeal was as evident in the month of March as it was in August thereafter, and no sufficient reason is shown for the delay until so near the end of the period that a slight accident or unexpected temporary interference might result in a loss of her appeal. Although the appeal was not taken until July 24th, a still further delay intervened until August 20th, before an order for the transcript was sent to the reporter by mail. This date occurred during the summer vacation of the courts, and the reporter, being absent from the state, did not receive the order until his return home on August 30th. As will be thus seen, the order for the transcript was not given until about twenty days before the time of appeal would expire, and when received by the reporter, only about eleven days of the time remained available. The reporter testifies that, working at average speed, he could have finished the transcript in about twelve days. The shorthand notes had still to be procured from the clerk's office, and it was not until September 3d that the work actually began. The reporter employed assistance and worked extra hours, and would probably have completed it in time for defendant's use, but for the unfortunate failure of his eyesight. Undoubtedly defendant and her counsel were acting in the utmost good faith, but

they seem to have been willing to take their chances of a late appeal, and, having done so, we do not feel like disturbing the ruling of the trial court. It is true there is a showing that defendant has little or no means of her own, and is dependant on a daughter for assistance in prosecuting her defense. But it seems from the daughter's testimony that she was first informed of the necessity of the transcript on August 12, 1902, and within two days from that time forwarded the money for the reporter's fees. There is grave doubt whether the misfortune incident to the reporter's failing eyesight was an unavoidable casualty, within the meaning of Code, section 4091, which seems to have special reference to matters occurring upon or preceding the trial of the principal case. But it is not necessary to decide that question at this time. Should we hold with appellant upon that proposition, we still think the record sufficient to sustain the ruling of the court below.

The order appealed from is AFFIRMED.